Daniel DEJESUS, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 600, 2008.

Supreme Court of Delaware.

Submitted: June 24, 2009.
Decided: July 16, 2009.

Andrew J. Witherell, Esquire, Wilmington, DE, for appellant.

James T. Wakley, Esquire, Department of Justice, Wilmington, DE, for appellee.

Before HOLLAND, BERGER and RIDGELY, Justices.

HOLLAND, Justice:

The defendant-appellant, Daniel Dejesus, appeals from the Superior Court's judgment that he violated the terms of his probation. Dejesus contends that the State produced insufficient evidence at the Violation of Probation ("VOP") hearing for the Superior Court to find, by a preponderance of the evidence, that he violated the terms of his probation. The State argues that Dejesus' claim is moot because he pled guilty to one count of possession with intent to deliver after the VOP hearing. The State's argument is correct. Therefore, the judgment of the Superior Court must be affirmed.

### Facts and Procedural History

In May 2007, Dejesus was arrested and subsequently charged with Robbery in the First Degree and Assault in the Second Degree. He pled guilty to the assault charge in exchange for dismissal of the robbery charge. As a result, Dejesus was sentenced to four years and six months at Level V incarceration, suspended after six months for Level III probation. In February 2008, the Superior Court found that Dejesus violated the terms of his probation and sentenced him to three years at Level V incarceration, suspended after four months for Level III probation.

On September 17, 2008, Probation Officers Robert Willoughby, Jr., and Jeanette Lingafelt, along with New Castle County Police Detectives Brian Shahan and Scott Twigg (collectively, the "officers"), conducted an administrative search of Dejesus' residence. Officer Willoughby testified at the VOP hearing that he had learned from Detective Shahan that an informant was arrested for possession of a firearm and the informant had purchased that firearm from Dejesus. The informant reported that he was familiar with Dejesus' residence, that Dejesus lived on the

second floor of the house, and that he had seen Dejesus with guns and drugs in the house. Officer Willoughby testified that he corroborated the informant's description of Dejesus and his residence with Dejesus' probation officer, Stuart Moskowitz, who had made home visits to Dejesus. Officer Willoughby requested and received permission to conduct an administrative search of Dejesus' residence.

When the officers arrived at the house, Dejesus' father led them upstairs, where the officers witnessed Dejesus running from a room in the back of the residence. The officers met Dejesus in the kitchen area of the house and placed him in investigative detention there. Following protocol, the officers proceeded to clear the residence to ensure no one else was home.

Officer Willoughby testified that as he walked to the back of the residence, he heard Dejesus shouting, "Don't—my bedroom's all the way straight back. Don't search any other rooms!" Officer Willoughby entered a hallway, noting a door on the right and a door at the end of the hallway. Despite Dejesus' protestations, he opened the door on the right to the "middle bedroom." Inside, Officer Willoughby found a "smorgasbord" of drugs and paraphernalia in plain view, including: marijuana, crack cocaine, Xanax pills, Endocet pills, a box cutter, a digital scale, assorted baggies, and $80 in cash. He also found in the middle bedroom Dejesus' wallet, containing his identification card, and various pieces of mail addressed to Dejesus. Dejesus was later searched and found in possession of one Endocet pill that matched the pills recovered from the middle bedroom.

At the VOP hearing, Officer Moskowitz testified that during his routine visits to Dejesus, Dejesus identified the back bedroom as his. During the administrative search, however, the officers searched the back bedroom and found items belonging to Dejesus' father and clothing that appeared to belong to "an older person." Officer Willoughby testified that during the search Dejesus claimed the middle bedroom belonged to Dejesus' brother. But, the officers found an identification card belonging to Dejesus' brother in a third bedroom on a separate floor of the residence.

On September 18, 2008, Dejesus was arrested and subsequently charged with Possession With Intent to Deliver a Narcotic Schedule II Controlled Substance (Endocet),[1] Possession With Intent to Deliver a Narcotic Schedule II Controlled Substance (crack cocaine),[2] Possession With Intent to Deliver a Non–Narcotic Schedule IV Controlled Substance (Xanax),[3] Possession With Intent to Deliver a Non–Narcotic Schedule I Controlled Substance (marijuana),[4] Possession of Drug Paraphernalia,[5] and Maintaining a Dwelling for Keeping Controlled Substances.[6] On September 22, 2008, an administrative warrant was filed against Dejesus as a result of his September 18 arrest.

A fast-track VOP hearing was held in the Superior Court on November 19, 2008. The Superior Court found that Dejesus was in possession of the contraband recovered from his residence, which violated the terms of his probation. The Superior Court then sentenced him to two years and eight months at Level V incarceration, suspended after one year and eight

1. Del.Code Ann. tit. 16, § 4751.

2. Del.Code Ann. tit. 16, § 4751.

3. Del.Code Ann. tit. 16, § 4752.

4. Del.Code Ann. tit. 16, § 4752.

5. Del.Code Ann. tit. 16, § 4771.

6. Del.Code Ann. tit. 16, § 4755.

months for Level III probation. On December 12, 2008, Dejesus filed a *pro se* notice of appeal from that decision.[7]

On February 2, 2009, Dejesus pled guilty to Possession With Intent to Deliver a Non–Narcotic Schedule I Controlled Substance (marijuana)[8] in exchange for a *nolle prosequi* on the remaining charges. Dejesus was sentenced to five years at Level V incarceration, suspended immediately for Level III probation.

### Contention on Appeal

Dejesus claims the Superior Court abused its discretion in finding that he violated the terms of his probation, because there was insufficient evidence to meet the preponderance of evidence standard. Specifically, Dejesus argues there was no testimony that established that there had been surveillance of Dejesus engaging in illegal activity and, because the residence was occupied by three males, there was only a one in three chance the drugs and paraphernalia belonged to him.

The State argues that Dejesus' claim is moot because he pled guilty to one count of possession with intent to deliver after the VOP hearing. An issue becomes moot if intervening events cause a party to lose its standing to pursue the issue during the pendency of the action.[9] A party has standing to pursue an issue where: "(1) there is a claim of injury-in-fact; and (2) the interest sought to be protected is arguably within the zone of interest to be protected or regulated by the statute or constitutional guarantee in question."[10]

### VOP Claim Moot

In *Frady v. State*, the defendant pled guilty to Unlawful Sexual Intercourse in the Third Degree and Burglary in the Third Degree.[11] After thirteen years in prison at Level V, he was released on probation.[12] While he was on probation, he was charged with seven counts of Rape in the Fourth Degree.[13] Following a VOP hearing, the Superior Court found the defendant had committed Rape in the Fourth Degree and, as a result, had violated the terms of his probation.[14] The defendant filed an appeal from the Superior Court's decision.[15] He then entered an agreement with the State, pleading guilty to Unlawful Sexual Contact in the Second Degree in exchange for dismissal of the remaining charges.[16]

On appeal, this Court held that, by pleading guilty to a crime as part of a plea agreement, the defendant's prior appeal from the VOP hearing was moot.[17] We explained that the defendant's voluntary plea established guilt for the crime charged, whether or not his conduct actually satisfied the elements of the offense.[18]

---

7. Since that time, trial counsel has acknowledged his continuing obligation to represent Dejesus and has filed a formal notice of appeal on February 3, 2009, as well as an opening brief.

8. Del.Code Ann. tit. 16, § 4752.

9. *See General Motors Corp. v. New Castle County*, 701 A.2d 819, 823 (Del.1997).

10. *Id.* at 823–24 (quoting *Gannett Co. v. State*, 565 A.2d 895, 897 (Del.1989)).

11. *Frady v. State*, 2000 WL 1897395, at *1 (Del.Supr. Dec. 19, 2000).

12. *Id.*

13. *Id.*

14. *Id.*

15. *Id.*

16. *Id.*

17. *Id.*, at *2.

18. *Id.*, at *1–2.

In *Frady*, we held that the defendant's evidentiary appeal was moot because his later guilty plea supported the Superior Court's determination that he violated the terms of his probation.[19]

Dejesus' claim mirrors the defendant's claim in *Frady*. Dejesus was arrested and charged with several crimes. As a result, the Superior Court found him in violation of the terms of his probation. Subsequently, Dejesus pled guilty to one charge of possession with intent to deliver arising out of the conduct leading to his arrest. Like the defendant in *Frady*, Dejesus' guilty plea supports the Superior Court's finding that he violated the terms of his probation and renders his appeal from that determination moot.

### Conclusion

The judgment of the Superior Court is affirmed.